# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| THE LOS ANGELES LAKERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, <br><br> Defendant. | CV 21-02281 TJH (MRWx) <br><br><br> Order |

The Court has considered Defendant Federal Insurance Company's ["Federal"] motion to dismiss [dkt. # 42], together with the moving and opposing papers.

The following facts are as alleged in the First Amended Complaint ["the FAC"].

In August, 2019, the Los Angeles Lakers, Inc. ["the Lakers"] purchased an all-risk commercial property insurance policy ["the Policy"] from Federal for, *inter alia*, the Staples Center, as it was then known, and the UCLA Health Training Center [collectively, "the Covered Properties"]. The Policy was in effect from August 1, 2019, to August 1, 2020. The Lakers tendered property damage and business interruption claims to Federal for losses related to the SARS-CoV-2 virus ["the Virus"], which causes the COVID-19 disease. Federal denied the claims because, it concluded, there was no direct physical damage or loss to the Covered Properties.

The Policy obligated Federal to reimburse the Lakers for "direct physical loss or damage to [the Covered Properties] caused by, or resulting from, a peril not otherwise excluded" ["the Property Damage Clause"]. The Policy did not contain an exclusion for damage caused by a virus.

The Policy, also, obligated Federal to reimburse the Lakers for lost business income, and expenses incurred, due to, *inter alia*: (1) Actual or potential impairment of the Lakers' operations "caused by or result[ing] from direct physical loss or damage" to the property ["Business Interruption Clause"]; or (2) Actual impairment of the Lakers' operations "directly caused by the prohibition of access to" the property by a civil authority, provided that "the prohibition of access by a civil authority must be the direct result of direct physical loss or damage" to property away from, but within one mile of, the Lakers' Covered Properties ["Civil Authority Clause"].

As early as December, 2019, the Virus began to spread in Los Angeles as it was exhaled by infected people. Some studies concluded that when the Virus landed on physical surfaces it could be transmitted to other people who touched those surfaces. In March, 2020, a number of Lakers players, as well as others who were present at the Covered Properties during the previous weeks, tested positive for COVID-19.

On March 11, 2020, the National Basketball Association suspended its season due to COVID-19. On March 15, 2020, Los Angeles Mayor Eric Garcetti issued an order closing all performance venues. On March 16, 2020, the Los Angeles County Public Health Officer ["the Health Officer"] issued an order prohibiting mass gatherings of more than 50 people, including all arena events, and closing gyms and fitness centers. On March 19, 2020, the Health Officer prohibited gatherings of more than 10 people, with violators subject to fine, imprisonment, or both.

Also, on March 19, 2020, California Governor Gavin Newsom issued Executive Order N-33-20, which required Californians to shelter at home, with violators subject to misdemeanor prosecution. On April 1, 2021, Mayor Garcetti revised his Safer at Home Order, to prohibit, *inter alia*, all non-exempt public gatherings to further limit the spread

of COVID-19. The Safer at Home Order stated that it was "given because, among other reasons, the COVID-19 virus . . . is physically causing property loss or damage due to its tendency to attach to surfaces for prolonged periods of time." Violators of the Safer at Home Order were, also, subject to fine, imprisonment, or both.

As a result of the closure of the Staples Center, the Lakers alleged that they lost tens of millions of dollars in revenue. The Lakers, further, alleged that the presence of Virus particles on fixtures and building systems caused physical alterations to the Covered Properties. Specifically, Virus particles landed on, and adhered to, surfaces such as fabric seats, elevator buttons, and air ducts, causing a physical and chemical reaction that transformed the surfaces into vectors of viral spread called fomites. As a result, the Lakers upgraded the Covered Properties to include, *inter alia*, new air filters; touchless light switches, toilets, and sinks; sleeves or coatings for high-touch surfaces; and plexiglass dividers. The Lakers alleged that the Covered Properties were not usable until those upgrades were completed. The Lakers, also, alleged that there are five Metro stations within a mile of the Staples Center that fans use to get to Lakers games; that COVID-19 was present in, and caused physical loss or damage to, those Metro stations; and that those stations were closed by civil authorities.

On June 12, 2020, the Health Officer allowed professional sports teams to reopen their facilities for training and events, but continued the ban on spectators. After consultations with the Los Angeles County Department of Public Health, the Lakers made extensive and costly changes to procedures and protocols that enabled them to resume training at the UCLA Health Training Center.

On March 15, 2021, the Lakers filed this action for declaratory judgment, pursuant to 28 U.S.C. § 2201; breach of contract; and breach of the implied covenant of good faith and fair dealing.

In April, 2021, the State of California allowed live events with spectators to resume, subject to strict protocols.

On August 11, 2021, the Court granted Federal's motion to dismiss the Lakers'

original complaint, without prejudice, after concluding that the Lakers' allegations of direct physical loss or damage at the Covered Properties were mere legal conclusions couched as factual allegations, and, therefore, were insufficient to state a claim.

On October 6, 2021, the Lakers filed their FAC, which alleged the same claims that were previously dismissed but with additional factual allegations. The Lakers, also, relied on *Inns by the Sea v. Cal. Mut. Ins. Co.*, 71 Cal. App. 5th 688 (2021), which was published after the original complaint, here, was dismissed.

Federal, now, moves to dismiss the FAC.

**Motion to Dismiss**

While a complaint need not include detailed factual allegations for each element of each claim, it must contain enough facts to state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff must not simply restate the elements of its claim, but, rather, must allege enough facts to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the Court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Iqbal*, 556 U.S. at 678. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679.

The claims alleged in the FAC require the Lakers to establish the validity of its three insurance claims. "The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage[.]" *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010). The parties, here, agree that each of the Lakers' three coverage claims require it to have suffered "direct physical loss of or damage to property." The burden is on the Lakers to establish that physical loss or damage occurred. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 890 (9th Cir. 2021).

The Policy does not define direct physical loss or damage. Consequently, the Court must construe those terms. Because the Policy is a contract, the Court must apply the rules of contractual interpretation to construe the terms. *See Palmer v. Truck Ins.*

*Exchange*, 21 Cal. 4th 1109, 1115 (1999). The Court's goal, here, is to give effect to the parties' mutual intent. *See Minkler*, 49 Cal. 4th at 321. If possible, the Court must infer that intent solely from the contract's written provisions. Cal. Civ. Code § 1639. When contractual terms are clear and explicit, the Court will interpret them by using their ordinary and popular meaning. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995). When contractual terms are ambiguous, the Court will interpret those terms so as to protect the insured's objectively reasonable expectations. *Minkler*, 49 Cal. 4th at 321. All ambiguous terms must be construed against the insurer. *Minkler*, 49 Cal. 4th at 321. Finally, the language in a contract must be interpreted as a whole, with consideration of the circumstances. *Waller*, 11 Cal. 4th at 18-19.

The California Court of Appeal's recent decision in *Inns by the Sea* is squarely on point, here. The plaintiff in that case owned five lodging facilities in California, and had an insurance policy that covered, *inter alia*, "direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." *Inns by the Sea*, 71 Cal. App. 5th at 693, 794-95. The Court of Appeal considered whether the plaintiff sufficiently alleged direct physical damage or direct physical loss. *See Inns by the Sea*, 71 Cal. App. 5th at 699.

The Court of Appeal construed "direct physical damage" by giving each word its ordinary and popular meaning as defined in the 2021 edition of Merriam-Webster's Online Dictionary ["the Dictionary"]. *Inns by the Sea*, 71 Cal. App. 5th at 699-700. The Dictionary defined "physical" as "having material existence: perceptible especially through the senses and subject to the laws of nature." *Inns by the Sea*, 71 Cal. App. 5th at 699-700. Thus, the question of whether direct physical damage occurred can usually focus on whether there has been a "physical alteration" to the premises. *Inns by the Sea*, 71 Cal. App. 5th at 700. The Dictionary defined "direct" as "characterized by close logical, causal, or consequential relationship." *Inns by the Sea*, 71 Cal. App. 5th at 700. Finally, the Dictionary defined "damage" as "loss or harm resulting from injury to . . . property." *Inns by the Sea*, 71 Cal. App. 5th at 700. Accordingly, the Court of Appeal

held that a plaintiff claiming direct physical damage to its insured property must plead a causal connection between any physical alteration to that property, and, any detrimental economic impact that the plaintiff claimed to have suffered. *Inns by the Sea*, 71 Cal. App. 5th at 704.

With regard to direct physical loss, the Court, again, referred to the Dictionary, which defined "loss" as including "destruction," "ruin," "the partial or complete deterioration or absence of a physical capability or function," and "the harm or privation resulting from losing or being separated from someone or something." *Inns by the Sea*, 71 Cal. App. 5th at 705, n.18. Even a mere loss of usability, however, must be causally connected to "a distinct, demonstrable, physical alteration of the property." *Inns by the Sea*, 71 Cal. App. 5th at 706.

**Property Damage Claim**

The validity of the Lakers' Property Damage insurance claim depends on whether the Virus caused direct physical damage or loss to the Covered Properties. The Lakers alleged, here, that the Virus physically altered surfaces at the Covered Properties by changing their chemical and physical properties and creating viral vectors that required cleaning or replacement before the Covered Properties were safe again. The Lakers seek, *inter alia*, coverage for the cost of cleaning or replacing those allegedly damaged surfaces.

The Lakers alleged both that the Covered Properties were physically altered, and that those alterations caused detrimental economic impact. Accordingly, the Lakers stated a claim, here, for declaratory judgment and breach of contract as to the Policy's Property Damage Clause. *See Inns by the Sea*.

**Business Interruption Claim**

The Lakers' Business Interruption insurance claim depends on whether the Virus caused direct physical damage or loss that, in turn, caused the interruption of its business operations. The Policy provides that Federal "will pay for the actual business income loss [and extra expense] you incur due to the actual impairment of your operations . . . during

the period of restoration[.] This actual . . . impairment of operations must be caused by or result from direct physical loss or damage by covered peril to property[.]"

While there is no exclusion for virus-related covered in the Policy, Federal argued that the Virus is not a "covered peril" because the Virus did not create direct physical loss or damage that could have caused impairment to the Lakers' operations.

Once again, *Inns by the Sea* is on point. Like the Policy, here, the *Inns by the Sea* plaintiff's policy covered actual loss of business income sustained during the "period of restoration," if the interruption to the plaintiff's operations was "caused by direct physical loss of or damage to property" that, in turn, was "caused by or result from a Covered Cause of Loss." *Inns by the Sea*, 71 Cal. App. 5th at 695. The Court of Appeal held that the plaintiff could not reasonably allege the required causal connection between the alleged Virus damage to its property and the financial losses caused by the closure of its business. *Inns by the Sea*, 71 Cal. App. 5th at 704. The closure was not caused by Virus damage at the plaintiff's lodging facilities, the Court of Appeal explained, but by the blanket government health orders that, in an effort to stop the spread of COVID-19, closed all businesses in the jurisdiction. *Inns by the Sea*, 71 Cal. App. 5th at 693, 703-04. In other words, whether the plaintiff could resume its business operations did not depend on whether it had repaired its property by eliminating the presence of the Virus from its property, but on whether the government rescinded its health orders. *Inns by the Sea*, 71 Cal. App. 5th at 704.

The Lakers' Business Interruption insurance claim suffers the same infirmity. According to the FAC, the Staples Center closed in March, 2020, due to a litany of blanket NBA and government measures. The Lakers spent much of the intervening period refurbishing and virus-proofing the Staples Center. In fact, the Lakers alleged that government entities required such "repairs and alterations" to be made at the Covered Properties before they could be reopened. Yet, those repairs were not, alone, sufficient to restore the Lakers' business operations. Indeed, even if all of the repairs and alterations had been completed by April 15, 2020, the Staples Center still could not have

reopened until the State of California allowed it to reopen on April 15, 2021.

The Lakers, in an attempt to allege a chain of causation between the physical alterations to the Covered Properties and their closure, alleged that the government orders were, in fact, prompted by physical alterations from the Virus at the Staples Center, and were directly targeted at the Staples Center. The Lakers cited to Mayor Garcetti's Safer at Home Order, which stated that it was issued, in part, because the Virus was "physically causing property loss or damage due to its tendency to attach to surfaces[.]"

Yet, the Safer at Home Order, also, clearly stated that its purpose was "to further limit the spread of COVID-19" and to protect "life and property in the City of Los Angeles." The Safer at Home Order did not close just the Staples Center; it closed everything in Los Angeles save for a few exempt essential and emergency services. In other words, the purpose of the Safer at Home Order was to address the presence of the Virus and the resulting conditions in all of Los Angeles, not just at the Staples Center. The Safer at Home Order's purpose was accomplished only when spread of the Virus in Los Angeles was limited, not when repairs at the Covered Properties were completed.

Nor did the Safer at Home Order, alone, close the Covered Properties. In *Inns by the Sea*, the Court of Appeal took judicial notice of two governmental orders that had closed the plaintiff's business so that it could examine their provisions. *Inns by the Sea*, 71 Cal. App. 5th at 693. This Court, pursuant to Fed. R. Evid. 201, can take judicial notice of the governmental orders that closed the Covered Properties, here.

The Health Officer's March 16 and March 19, 2020, orders stated that their purpose was "to stem or slow the spread of COVID-19 within the greater Los Angeles community." They, also, explained that mass gatherings were prohibited because they "pose an increased risk for transmission of COVID-19 and thus, are substantial risk to public health." Governor Newsom's order, issued on March 19, 2020, explained that "[t]his Order is being issued to protect the public health of Californians," and that, in ordering Californians to stay at home, "[o]ur goal is simple, we want to bend the curve, and disrupt the spread of the virus." Those orders described their goal as the preservation

of public health, not private property. Indeed, any one of the governmental orders applicable in Los Angeles would have resulted in the functional closure of the Covered Properties, even though none of them specifically mentioned the Staples Center.

Thus, there is no causal chain connecting Virus-related physical alterations at the Covered Properties to the properties' closure. This is true even under the lesser causation standard that the Lakers argued applies in this case. In insurance contracts, the term "resulting from" is "generally equated with origination, growth or flow from the event." *Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 424 (2020). The closure of the Covered Properties, here, originated in, and flowed from, the governmental orders, and not from any alterations to the Covered Properties. Even if the Virus had *never* been present at the Staples Center, the applicable governmental orders would have closed it and, then, dictated when it could reopen.

Accordingly, the Lakers did not, and cannot, plausibly plead that the interruption of their business operations was due to direct physical damage or loss at the Covered Properties. Therefore, the Lakers did not, and cannot, state a claim for declaratory judgment and breach of contract related to the Business Interruption Clause. *See Twombly*, 550 U.S. at 570.

**Civil Authority Claim**

The Lakers' Civil Authority insurance claim depends on whether it can plead that its business operations were interrupted because nearby Metro stations experienced direct physical damage or loss. Specifically, the Policy provides that Federal "will pay for the actual business income loss [and extra expense] you incur due to the actual impairment of your operations . . . directly caused by the prohibition of access to . . . your premises . . . by a civil authority. This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises . . . by a covered peril, provided such property is within . . . one mile . . . from such premises."

The insurance policy issued to the plaintiff in *Inns by the Sea* covered the "loss of Business Income you sustain and necessary Extra Expense caused by action of civil

authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." *Inns by the Sea*, 71 Cal. App. 5th at 710. The plaintiff identified the two governmental orders as the "action of civil authority" triggering its coverage. *Inns by the Sea*, 71 Cal. App. 5th at 711. Accordingly, the Court of Appeal examined those governmental orders to determine whether they were the result of direct physical loss or damage to other premises. *Inns by the Sea*, 71 Cal. App. 5th at 711. Both of the governmental orders made clear that they were issued to prevent the spread of the Virus, and were not in response to direct physical loss of or damage to any property. *Inns by the Sea*, 71 Cal. App. 5th at 711-12.

As discussed above, the governmental orders that closed both the Covered Properties and the Metro stations were aimed at limiting viral spread in the community, not at mitigating property damage at any specific facility. Although Los Angeles's Stay at Home Order stated, in part, that it was prompted by Virus-related property damage, it applied to the entire City of Los Angeles, and would have closed the Metro stations even if the Virus had never been present there. Thus, the Court cannot assume that the Stay at Home Order was issued in response to direct physical loss or damage at the Metro stations.

Accordingly, the Lakers did not, and cannot, plausibly plead that the interruption of their business operations was due to civil authority prompted by physical damage or loss at the Metro stations. Therefore, the Lakers did not, and cannot, state a claim for declaratory judgment and breach of contract related to the Civil Authority Clause. *See Twombly*, 550 U.S. at 570.

**Bad Faith Claim**

The implied covenant of good faith and fair dealing obligates an insurer to, *inter alia*, make a thorough investigation of its insured's claim. *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979). Here, with regard to the Property Damage insurance claim, the Lakers alleged that Federal sent the Lakers a form denial letter instead of

thoroughly investigating the tendered claim. Accordingly, the Lakers stated a claim for breach of the implied covenant of good faith and fair dealing.

However, with regard to the Lakers' Business Interruption and Civil Authority insurance claims, because Federal rightfully denied those claims, as discussed above, it did not act in bad faith. *See Everett v. State Farm Gen. Ins. Co.*, 162 Cal. App. 4th 649, 663 (2008).

Accordingly,

𝕴𝖙 𝖎𝖘 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that the motion to dismiss the First Amended Complaint be, and hereby is, 𝕲𝖗𝖆𝖓𝖙𝖊𝖉, in part, with prejudice, to the extent the claims are based on the Business Interruption Clause and Civil Authority Clause of the Policy.

𝕴𝖙 𝖎𝖘 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that the motion to dismiss the First Amended Complaint be, and hereby is, 𝕯𝖊𝖓𝖎𝖊𝖉, in part, to the extent the claims are based on the Property Damage Clause of the Policy.

Date: March 17, 2022

Terry J. Hatter, Jr.
Senior United States District Judge